UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RUFINO ACEVEDO, | ) | 1:09-CV-01479 AWI JMD HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATIONS |
| | ) | REGARDING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| JAMES YATES, | ) | |
| | ) | |
| Respondent. | ) | THIRTY (30) DAY DEADLINE TO FILE |
| | ) | OBJECTIONS |

Rufino Acevedo (hereinafter "Petitioner") is a prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a 2001 conviction for attempted murder. The trial court sentenced Petitioner to a term of life imprisonment with the possibility of parole. Petitioner is not currently challenging his conviction; rather, the instant petition challenges the decision by the California Board of Parole Hearings (the "Board") to deny Petitioner parole. Petitioner appeared before the Board on April 9, 2008.

In June 2008, Petitioner filed a petition for writ of habeas corpus with the Santa Clara County Superior Court challenging the Board's decision. (Resp't Answer Exs. 1.) The Superior Court issued a reasoned opinion denying the petition on July 3, 2008. (Resp't Answer Ex. 2.)

Petitioner also filed petitions for writ of habeas corpus with the California Court of Appeal and the California Supreme Court. (Resp't Answer Exs. 3, 5.) The California Court of Appeal and the California Supreme Court issued summary denials of the petitions. (Resp't Answer Ex. 4, 6.)

On August 11, 2009, Petitioner filed the instant federal petition for writ of habeas corpus. Respondent filed an answer to the petition on February 9, 2010, to which Petitioner filed a traverse on March 17, 2010.[1]

## FACTUAL BACKGROUND

California regulations mandate that the Board consider the circumstances of the commitment offense in determining parole suitability. *See* Cal. Code Regs. tit. 15, § 2402(c)(1). As the facts of the commitment offense were considered by both the Board and the State court, they are relevant to the Court's inquiry into whether the State court's decision upholding the Board's denial of parole was objectively unreasonable. The Board incorporated into the record a summary of the offense taken from the probation officer's report, dated March 29, 2001. As read into the record, the report stated:

> On October 17th, 1997 at or about 12:26 a.m., Defendants Rufino Acevedo, Jose Guevara, and Jose Rodriguez had been previously consuming alcohol that night and while walking to the Seven Eleven store, Acevedo and Guevara, began arguing over personal matters . . . While all three individuals walked to the victim Michael Hart's front yard, Acevedo and Guevara escalated their conflict to engage in a fist fight.
> After observing the altercation between Acevedo and Guevara, Hart yelled to the Defendant to take the fight out into the street. Upon hearing this statement, Rodriguez, holding three open beer bottles, began to approach Hart and responded, go back into your house, I know where you live, you better not call the police. I will kill you. As Hart became fearful for his family's safety, he retrieved an automobile tire iron.
> After all three returned from Seven Eleven, the participants congregated in an area across the street from Hart's front yard. In the vicinity of the Defendants, Hart observed and heard beer bottles making contact with passing automobiles. A beer bottle struck an automobile driven by victim Ossie Dungie. Dungie stopped his automobile, backed up to the vicinity of the Defendants, and while standing behind his open vehicle door, asked why they threw a bottle at his vehicle and did I do something wrong. The Defendants responded that they had thrown a bottle across the street.
> Dungie turned around and attempted to re-enter his vehicle when two Defendants approached and pushed him in the vehicle. After Dungie succeeded in pushing those two individuals off him, Acevedo, Guevara, and Rodriguez began striking him with their fists, and kicking him with their feet. In self-defense, the victim attempted to strike the individuals and upon walking backwards to re-enter his vehicle, he slipped and fell down. While Dungie was on the ground, two Defendants grabbed the victim under each arm and began to drag him towards a tree in Hart's front yard. When Dungie was in Hart's front yard, Acevedo, Guevara, and Rodriguez obtained nearby landscaping rocks described as five-pound boulders. They began forcefully throwing rocks upon the victim, striking him on various parts of his body. While Dungie was in a prone position and helpless, Acevedo, Guevara, and

---

[1] In the answer, Respondent admits that Petitioner exhausted his state remedies. (Resp't Answer at 2.) Further, Respondent admits that the petition is timely and "is not subject to any other procedural bar." (Id. at 3.)

> Rodriguez continued throwing rocks along with kicking him on various parts of his body, leaving the body unconscious and covered in blood.
>
> Shortly thereafter, all three Defendants fled the scene. An innocent bystander, Myron Taylor, arrived at the scene and attempted to render assistance to Dungie. Hart met Taylor in his front yard and described to him the events that had just transpired. At that point, . . . Dungie regained consciousness and attempted to arise while Hart told the victim to stay down. Upon noticing two standing individuals around the prone victim, the three Defendants accompanied by Felipa Bautista began running back towards the crime scene. As the four Defendants approached Taylor, he fled the scene in his automobile. Observing the approaching Defendants, Hart also fled the scene and re-entered his residence.
>
> Acevedo, Guevara, and Rodriguez began approaching Dungie, still in a prone position and helpless, and all three began forcefully throwing rocks on various parts of his body. Bautista, present at the crime scene, observed the bodily attack on the victim. Hart exited his residence while waving a tire iron, shouted at all four Defendants, that's enough; you're going to kill him. As a response, Acevedo, Guevaa, and Rodriguez began running after Hart. Following Hart to his residence front door, Acevedo, Guevara and Rodriguez began pushing the front door open in an attempt to gain entry. While struggling to fully close and lock the front door, Hart stated to his son, go get the gun. Upon hearing this statement from Hart, the Defendants left the doorway and fled the scene, running down the street, accompanied by Bautista. Acevedo left the doorway and forcefully threw a cinder block to Hart's residence window narrowly missing Kathleen Hart before fleeing down the street.
>
> Victim Ossie Dungie sustained extensive injuries as a result of this attack. The victim had red, black swollen eyes, a pulverized eye socket, lacerations on his upper forehead area, and two dislocated shoulders. Further injuries noted, that included a broken nose, swollen lips, broken tooth, fractures to his cranium. The victim was treated at the scene by paramedics and transported to a local hospital. Hart sustained property damage to his residence window.
>
> All four Defendants were subsequently apprehended at a different location . . . Michael Hart and his son identified Rufino Acevedo, Jose Guevara, and Jose Rodriguez as the perpetrators. Michael Hart stated that he observed all three throwing at least three boulders each on victim Dungie. Michael Hart's son also observed the incident and identified all three participants as throwing a cumulative, total of ten to 12 boulders on the victim . . . All four Defendants denied being involved in this matter. Laboratory results indicate that all four Defendants had significant levels, blood alcohol levels. Acevedo had a blood alcohol level of .13; Guevara had a blood alcohol level of .09; Rodriguez with a blood alcohol level of .13; and Bautista with a blood alcohol level of .15.

(Pet. Ex. A, Tr. Parole Hearing, at 11-16.)

## **DISCUSSION**

**I.      Jurisdiction**

A person in custody pursuant to the judgment of a State court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. Petitioner is currently incarcerated at Avenal State Prison, which is

located in Kings County.  As Kings County falls within this judicial district, 28 U.S.C. § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus. *See* 28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a State court convicted and sentenced Petitioner if the State "contains two or more Federal judicial districts").

## II.     AEDPA Standard of Review

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997).  The instant petition was filed after the enactment of AEDPA and is consequently governed by its provisions. *See Lockyer v. Andrade*, 538 U.S. 63, 70 (2003).  Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1))*, overruled in part on other grounds*, *Hayward v. Marshall*, 603 F.3d 546, 555 (9th Cir. 2010) (en banc); *see Lockyer*, 538 U.S. at 70-71.

Title 28 of the United States Code, section 2254 remains the exclusive vehicle for Petitioner's habeas petition as Petitioner is in the custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment.  *See Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-27 (9th Cir. 2006) *overruled in part on other grounds*, *Hayward*, 603 F.3d at 555.  As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id*. (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id*.  Finally, this Court must consider whether the state court's decision was

U.S. District Court
E. D. California

4

1  "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id*. at 72
2  (quoting 28 U.S.C. § 2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas court may grant
3  the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a
4  question of law or if the state court decides a case differently than [the] Court has on a set of
5  materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72.
6  "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state
7  court identifies the correct governing legal principle from [the] Court's decisions but unreasonably
8  applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  "[A] federal
9  court may not issue the writ simply because the court concludes in its independent judgment that the
10 relevant state court decision applied clearly established federal law erroneously or incorrectly.
11 Rather, that application must also be unreasonable." *Id*. at 411.  A federal habeas court making the
12 "unreasonable application" inquiry should ask whether the State court's application of clearly
13 established federal law was "objectively unreasonable." *Id*. at 409.
14     Petitioner bears the burden of establishing that the state court's decision is contrary to or
15 involved an unreasonable application of United States Supreme Court precedent.  *Baylor v. Estelle*,
16 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth
17 Circuit precedent remains relevant persuasive authority in determining whether a state court decision
18 is objectively unreasonable.  *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While *only* the
19 Supreme Court's precedents are binding on the Arizona court, and only those precedents need be
20 reasonably applied, we may look for guidance to circuit precedents"); *Duhaime v. Ducharme*, 200
21 F.3d 597, 600-01 (9th Cir. 1999) ("because of the 1996 AEDPA amendments, it can no longer
22 reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on
23 a federal Constitutional issue....This does not mean that Ninth Circuit caselaw is never relevant to a
24 habeas case after AEDPA. Our cases may be persuasive authority for purposes of determining
25 whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and
26 also may help us determine what law is 'clearly established'"). Furthermore, the AEDPA requires
27 that the Court give considerable deference to state court decisions.  The state court's factual findings
28 are presumed correct. 28 U.S.C. § 2254(e)(1).  A federal habeas court is bound by a state's

1    interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002).

2        The initial step in applying AEDPA's standards is to "identify the state court decision that is
3    appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more
4    than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last
5    reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that
6    later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same
7    ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained
8    state court decisions to the last reasoned decision to determine whether that decision was contrary to
9    or an unreasonable application of clearly established federal law. *Bailey v. Rae*, 339 F.3d 1107,
10   1112-13 (9th Cir. 2003). Here, the Santa Clara County Superior Court, the California Court of
11   Appeal, and the California Supreme Court reached the merits of Petitioner's claims. The California
12   Supreme Court and the California Court of Appeal's decisions were summary denials; thus, the
13   Court looks through those decisions to the last reasoned decision, namely, the decision by the Santa
14   Clara County Superior Court. *See Nunnemaker*, 501 U.S. at 804.

15   **III.    Review of Petitioner's Claims**

16       The petition for writ of habeas corpus sets forth a sole grounds for relief, contending that
17   Petitioner's due process rights were violated by the Board's denial of parole. (*See* Pet. Mem. P. &
18   A.)

19       The Court analyzes Petitioner's due process claims in two steps: "the first asks whether there
20   exist[s] a liberty or property interest which has been interfered with by the State; the second
21   examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'"
22   *Sass*, 461 F.3d at 1127. The United States Constitution does not, by itself, create a protected liberty
23   interest in a parole date. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981). Respondent argues that
24   Petitioner does not have a federally protected liberty interest in parole. (Resp't Answer at 3:10.)
25   Respondent further contends that even if Petitioner has a federally protected liberty interest in parole,
26   such protections do not encompass the application of a some evidence standard. (Id. at 3:11-3:12.)
27   Petitioner also rejects the application of the some evidence standard to his case, arguing that the
28   applicable standard is that the denial of parole must be supported by clear and convincing evidence

of his current dangerousness. (Pet'r's Traverse at 4-5.) The Court finds both Respondent and Petitioner's arguments unavailing in light of recent Ninth Circuit decisions.

The Ninth Circuit Court of Appeals has recognized that "[i]f there is any right to release on parole, or to release in the absence of some evidence of future dangerousness, it has to arise from substantive state law creating a right to release." *Hayward*, 603 F.3d at 555. The Ninth Circuit further recognized that "[t]here is no general federal constitutional 'some evidence' requirement for denial of parole, in the absence of state law creating an enforceable right to parole." *Id*. at 559. The *Hayward* court's finding, that there exists no free standing federal due process right to parole or the federal right to some evidence of current dangerousness, contained the consistent and continual caveat that state law may in fact give rise to federal protection for those rights. As the Ninth Circuit later expounded, "state created rights may give rise to liberty interests that may be enforced as a matter of federal law." *Pearson v. Muntz*, 606 F.3d 606, 609 (9th Cir. 2010) (per curiam) (citing *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). The *Pearson* court found that, "*Hayward* necessarily held that compliance with state requirement is mandated by federal law, specifically the Due Process Clause" as "[t]he principle that state law gives rise to liberty interests that may be enforced as a matter of federal law is long-established." *Id.*

The next question is whether California's parole scheme gives rise to a liberty interest enforced as a matter of federal law. The Ninth Circuit has definitively concluded that "California has created a parole system that independently requires the enforcement of certain procedural and substantive rights, including the right to parole absent 'some evidence' of current dangerousness." *Id*. at 611 (citing *Hayward*, 603 F.3d at 562); *see also Cooke v. Solis*, 606 F.3d 1206, 1213 (9th Cir. 2010) (noting that "California's 'some evidence' requirement is a component of the liberty interest created by the parole system of that state"). Consequently, the inquiry that a federal habeas court must undertake in determining whether the denial of parole comports with the requirement of federal due process is "whether the California judicial decision approving the governor's [or parole board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" *Hayward*, 603 F.3d at 563 (quoting 28 U.S.C. § 2254(d)(1)-(2)) (footnotes omitted).

### A.     State Court Decision

Thus, the initial inquiry facing this Court is whether the Santa Clara County Superior Court's decision was an unreasonable application of the California some evidence standard. Here, the Superior Court observed that while "[t]he Board acknowledged that Petitioner had been 'a model prisoner' throughout the entirety of his incarceration, [the Board'] denied parole based on the facts of the crime itself." (Resp't Answer Ex. 2 at 1.) The Superior Court further acknowledged that "[i]f Petitioner continues to perform as a model inmate, a due process violation might exist if he is again denied parole based solely on his commitment offense." (Id. at 2.) Despite recognizing that sole reliance on the commitment offense might violate Petitioner's constitutional rights, the Superior Court ultimately concluded that the Board's decision did not violate due process as there was some evidence the crime was aggravated.

The Court finds this decision to be an objectively unreasonable application of the California some evidence standard. As the Ninth Circuit observed in *Cooke*:

> Under California law, "the paramount consideration for both the Board and the Governor" must be "whether the inmate currently poses a threat to public safety and thus may not be released on parole,"[citation], and "the facts relied upon by the Board or the Governor [must] support the ultimate decision that the inmate remains a threat to public safety.

*Cooke*, 606 F.3d at 1214 (quoting *In re Lawrence*, 44 Cal. 4th 1181, 1210, 1213 (2008)); *see also* Cal. Code Regs. tit. 15, § 2402(a) ("[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole). The *Lawrence* court held that, "[t]he relevant determination for the Board and the Governor is, and always has been, an individualized assessment of the continuing danger and risk to public safety posed by the inmate." *In re Lawrence*, 44 Cal. 4th at 1227 (noting that "mere recitation of the circumstances of the commitment offense, absent articulation of a rational nexus between those facts and current dangerousness, fails to provide the required "modicum of evidence" of unsuitability"). In setting forth the standard for federal habeas courts, the Ninth Circuit reiterated this principle, stating that "a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" *Cooke*, 606 F.3d at 1214 (emphasis in original) (quoting *In re*

*Lawrence*, 44 Cal. 4th at 1221). The Superior Court's cursory decision fails to even mention current dangerousness; rather, focusing on whether there was evidence the crime was aggravated. The California Supreme Court rejected this very test concluding "that current dangerousness (rather than the mere presence of a statutory unsuitability factor) is the focus of the parole decision." *In re Lawrence*, 44 Cal.4th at 1210. As the Superior Court's decision is entirely devoid of any discussion or examination of whether there was evidence to support a finding that Petitioner is currently dangerous, the Court finds the State court's decision is an objectively unreasonable application of the California some evidence standard.

### B.     Parole Board's Decision

The finding that the state court's decision was objectively unreasonable does not end a federal habeas court's inquiry. *See Butler v. Curry*, 528 F.3d 624, 641 (9th Cir. 2008) (citing 28 U.S.C. § 2241(c)(3) in noting that a federal habeas court's finding that state court's decision is contrary to established federal law does not end that court's inquiry). Petitioner is only entitled to habeas corpus relief if his due process rights were violated by a lack of evidence supporting the Board's denial of parole as a federal habeas court's "power to grant the writ of habeas corpus to a state inmate depends on his actually being 'in custody in violation of the Constitution or laws ... of the United States.'" *Id*.

In the decision portion of the hearing, the Board discussed several factors that weigh for and against a grant of parole. (Pet. Ex. A at 77-88.) The Board observed that Petitioner had been a model inmate, participating in extensive self-help programming and upgrading vocationally. (Id. at 84.) Furthermore, Petitioner had received no disciplinary infractions during his incarceration. However, the Board ultimately concluded that Petitioner was unsuitable for parole based on the commitment offense and Petitioner's psychological report.

Here, the Court does not find the commitment offense by itself to be reliable evidence of current dangerousness. The offense here was committed in 1997, almost eleven years prior to the parole hearing in 2008, and thus cannot by itself be probative of current dangerousness. *See Cooke*, 606 F.3d at 1216 (finding that circumstance of the commitment offense that occurred in 1991 "cannot, standing alone, constitute the requisite evidence of current dangerousness" for a 2002 parole

hearing). As the California Supreme Court held in *In re Lawrence*, the commitment offense can only constitute the requisite evidence where something in the petitioner's "pre- or post-incarceration history, or current demeanor and mental state," indicates that the commit offense remains probative to his or her current dangerousness. *In re Lawrence*, 44 Cal. 4th at 1214. As noted by the Board, Petitioner's record pre-incarceration was minimal with a sole misdemeanor conviction for stealing beer. Similarly, the Board noted that Petitioner had been a model prisoner, having accrued no disciplinary infractions of any sort during his incarceration and having continuously participated in Alcoholics Anonymous and a plethora of self-help programming. The Court can identify nothing in Petitioner's post-conviction history that would render the commitment offense reliable evidence of Petitioner's current dangerousness.

Thus, the Court now examines whether evidence of Petitioner's current demeanor or mental state would render his commitment offense probative of current dangerousness. While Petitioner had expressed remorse during the course of the hearings, the Board found that such remorse was recent noting that the hearing was Petitioner's first time expressing remorse. (Id. at 86.) The Court rejects this finding by the Board as an unreasonable determination of fact in light of the evidence. The psychological evaluation, conducted three years prior to the parole hearing, clearly noted Petitioner "expresses remorse over the victim's injury. . . He realizes what harm he has done to the victim, the victim's family and his mother." (Pet. Ex. C at 7.) Seemingly, the Board conflates Petitioner's expression of remorse with his refusal to discuss the crime despite noting that Petitioner was not required to discuss the crime. (Id. at 85.) California law specifically prohibits the Board from holding Petitioner's refusal to discuss the crime against him in a parole consideration hearing. *See In re Aguilar*, 168 Cal. App. 4th 1479, 1491 (2008) (finding District Attorney's opposition to parole was unpersuasive as the opposition contended that inmate must accept responsibility for the crime before he can be granted parole); *see also* Cal. Penal Code § 5011(b) ("The Board of Prison Terms shall not require, when setting parole dates, an admission of guilt to any crime for which an inmate was committed."); Cal. Code Regs. tit. 15, § 2236 (" The board shall not require an admission of guilt to any crime for which the prisoner was committed. A prisoner may refuse to discuss the facts of the crime in which instance a decision shall be made based on the other

information available and the refusal shall not be held against the prisoner."). Thus, the Court finds no evidence in Petitioner's current demeanor or mental state that would permit the use of his commitment offense as reliable evidence of current dangerousness.

However, the Court does find that the psychological evaluation itself provides some evidence of current dangerousness. The psychological report classified Petitioner at a moderate risk for future violence. (Pet. Ex. C at 8.) The report contained the caveat that the current interview was "limited by the amount of information given to this examiner by the inmate at the time of the interview." (Id. at 2.) In assessing Petitioner's risk of dangerousness, the psychologist noted that Petitioner "would rate in the low end of the moderate range for future violence. This is due to the fact that he is not talking about his crime . . . This violent [sic] potential would significantly decrease once the inmate discusses his crime and fully accepts responsibility and expresses insight into the causal factors of the crime." (Id. at 8.) It is not unreasonable or prohibited for the psychological evaluation to have relied on Petitioner's failure to discuss the commitment offense. The some evidence standard is minimal and assures only that the record is not so devoid of evidence that the denial of parole was arbitrary. *See Sass*, 461 F.3d at 1129, *overruled in part on other grounds*, *Hayward*, 603 F.3d at 555. Thus, while the Court itself does not find that the psychological evaluation to be convincing evidence of current dangerousness, the Court acknowledges that the psychological evaluation is some evidence of current dangerousness.[2] Consequently, the Court finds that Petitioner's constitutional rights to due process were not violated as the psychological evaluation meets the standards of the some evidence inquiry.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE, the Clerk of Court be DIRECTED to enter judgment for Respondent, and a certificate of appealability be issued.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of

---

[2] Consequently, the Court recommends that a certificate of appealability be issued in this case as the Court finds this to be a case where reasonable jurists may disagree.

the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   September 9, 2010**              /s/ John M. Dixon
                                                              UNITED STATES MAGISTRATE JUDGE